IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

TIM BROTZMAN,

    Plaintiff,

v.

SELECTQUOTE INSURANCE SERVICES, a California corporation d/b/a SELECTQUOTE; and
SELECTQUOTE AUTO & HOME INSURANCE SERVICES, LLC, a Delaware limited liability company d/b/a SELECTQUOTE, and
SELECTQUOTE,

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff, Tim Brotzman, through his undersigned attorneys, hereby files his complaint and jury demand as follows:

### Nature of the Action

This is an action under Title I of the Americans with Disabilities Act of 1990 [hereinafter "ADA"] and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Tim Brotzman who was adversely affected by such practices.

As alleged with greater particularity below, Defendant failed to hire Plaintiff due to his disability. Defendant failed to provide reasonable accommodation in order to employ [the accommodation being employment] and engaged in disability harassment by

1

permitting Plaintiff to appear at its offices for a scheduled interview and then to cancel the interview once it saw him in his wheelchair. Defendant failed to notify Plaintiff it would not hire him if he was disabled, allowing him to expend significant time in connection with the interview process before dishonoring its commitment to interview him.

## Jurisdiction and Venue

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized by and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f) (1) and (3).

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado and are consistent with its history of irregular business practices as cited by the Better Business Bureau and other social media sites.

3. Venue is proper pursuant to 28 U.C.S.A. §1391(b) since all or a substantial part of the events or omissions giving rise to these claims occurred in Colorado.

## Parties

4. Plaintiff Tim Brotzman is the aggrieved party, and is a citizen of and domiciled in Colorado.

5. At all relevant times, Defendants, SelectQuote Insurance Services, a California corporation, d/b/a SelectQuote, and Selectquote Auto & Home Insurance Services, LLC, a Delaware limited liability company, d/b/a Selectquote, (hereafter collectively referred to as ("SelectQuote"), and SelectQuote, are authorized to do

business in Colorado, have continuously been doing business in the State of Colorado, and upon information and belief have continuously had at least 15 employees.

6. At all relevant times, SelectQuote has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

7. At all relevant times, Defendant SelectQuote has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## General Allegations

8. More than thirty days prior to the institution of this lawsuit, Tim Brotzman filed a charge with the Commission alleging violations of Title I of the ADA by Defendant SelectQuote.

9. The EEOC issued a Notice of Right to Sue on January 4, 2021, mailing it on January 20, 2021, it being received on January 22, 2021 by Plaintiff.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

11. Since at least May 2018, Defendant SelectQuote has engaged in unlawful employment practices at its call center in Centennial, Colorado, in violation of Sections 102(a), 102(b)(5)(A), 102(b)(5)(B), and 102(d)(4)(C) of Title I of the ADA, 42 U.S.C. §§ 12112(a), (b)(5)(A), (b)(5)(B), and (d)(4)(C).

12. Plaintiff is a 63-year-old male.

13. Plaintiff graduated from college in 1980.

14. Plaintiff was continuously employed until 2003 at which time he was seriously injured in a motor vehicle accident.

15. Plaintiff was hospitalized and in rehabilitation for three months.

16. Plaintiff was able to resume fulltime work after approximately 3 month of rehabilitation and recuperation.

17. Plaintiff's physical condition was permanently changed from being fully ambulatory to being wheelchair bound for life due to paraplegia.

18. Plaintiff however was willing, able and available to undertake full time work.

19. Plaintiff has undertaken continuous work other than during his post-accident recuperative period.

20. Plaintiff is a qualified individual with a disability.

21. Plaintiff is a paraplegic as identified within the International Classification of Diseases (ICD).

22. The Plaintiff has years of exceptional performance in the same SIC code as SelectQuote, including in Senior Market Sales which was the skill set being sought by Defendant.

23. The Plaintiff has been a Licensed Insurance Sales Agent since 1997 (Life, Accident & Health and Annuities) and Variable Life and Variable Annuities since 2003.

24. Plaintiff also had been issued a Series 6 and Series 63 Licenses from the Securities and Exchange Commission.

25. All of the preceding credentials and accomplishments of Plaintiff were known by the Defendant, which markets itself as assisting consumers in obtaining competitive insurance premium quotes, prior to a scheduled final interview, in view of Plaintiff having previously supplied them with his initial application.

26. Plaintiff submitted his initial online application for employment with the Defendant on May 7, 2019.

27. Plaintiff applied for a temporary to permanent position.

28. The position for which the Plaintiff was applying was entitled: Annual Enrollment Period Sales Agent ("AEP Sales Agent").

29. The position offered continued employment contingent on sales performance during the open enrollment period.

30. The Defendant was unaware that the Plaintiff was a wheelchair-bound paraplegic at the time of his application.

31. The Defendant's recruiters repeatedly contacted the Plaintiff from May 7, 2019 until they ceased interacting or responding to him on or about February 27, 2020.

32. The sequence of events was as follows prior to February 27, 2020:

33. May 7, 2019: Plaintiff submitted his resume on an online website and, later that date, job listings began to populate his inbox.

34. May 21 2019: SelectQuote via HR Rihanna Martin reached out and contacted Plaintiff.

35. May 25, 2019: SelectQuote via HR Jay Taylor reached out and contacted Plaintiff.

36. May 29, 2019: Plaintiff underwent a face-to-face interview with Mr. Aaron Bailey. Plaintiff interacted with two of Defendant's representatives, Ms. Tucker and Mr. Bailey, and had undertaken all requested application and vetting tasks.

37. Ms. Tucker and Mr. Bailey themselves never contacted Plaintiff again after Plaintiff reported for the preceding interview in a wheelchair.

38. Defendant later realized that the conduct shown to Plaintiff was discriminatory since he was first eagerly recruited and, once Defendant's representatives saw that he was disabled and in a wheelchair, they ceased communication with him.

5

39. Defendant apparently settled on a mitigation strategy on or about May 31, 2019.

40. SelectQuote, via HR Dominique Brock, of Property and Casualty, advised Plaintiff that if he were to be accepted, he would need to move to Kansas City for three weeks instead of allowing training online and testing in Westminster or Wheat Ridge, CO, knowing he would have difficulty traveling in this manner and this had not previously ever been disclosed.

41. The Property and Casualty line of business was not one in which Plaintiff had the required skill set and Defendant knew that it would not be suitable for Plaintiff.

42. .There had been no prior discussion concerning Plaintiff undergoing out-of-state training by SelectQuote for any position, and he had understood that all training would be local in Westminster, Colorado.

43. SelectQuote via HR Mario Gipson reached out on or about June 11-12, 2019 and contacted Plaintiff to undergo the application and testing process *again*.

44. Plaintiff explained to Mr. Gipson that Plaintiff had already submitted himself to the application, screening, testing and vetting process in May and was not selected.

45. SelectQuote via HR Mario Gipson reached out on or about July 12, 2019 and contacted Plaintiff.

46. Mr. Gipson took Plaintiff through the application process and online test *again*.

47. Plaintiff explained what had occurred to him by Select Quote previously and Mr. Gipson then shut off the hiring process, indicating that this was a sham process to cover up for Defendant's discrimination and unwillingness to hire a wheelchair-bound person.

48. No apology occurred.

49. No offer of employment occurred.

50. There is an audit trail and actual application that SelectQuote has access to.

51. July 18, 2019:  SelectQuote via HR Alicia Johnson contacted Plaintiff in order to commence and repeat the entire application and testing process *again*.

52. The preceding tactics represented a form of disability harassment, wearing down plaintiff until he seceded from the Defendant's application process.

53. Ms. Johnson had repeatedly indicated that Plaintiff was by far the most qualified of the company's candidates.

54. A final interview was scheduled for July 19, 2019 with SelectQuote Senior Sales Manager Calvin Fritz.

55. When Plaintiff appeared for the interview, it was abruptly cancelled and Plaintff was shown the door.

56. The Plaintiff reported for the preceding interview in a wheelchair.

57. An Equal Employment Opportunity Commission disability discrimination charge was thereafter filed.

58. The Defendant refused mediation during the course of the charge's processing, including failing to hire Plaintiff.

59. Defendant, via HR Britney Bolden, contacted Plaintiff on or about February 27, 2020 to commence and repeat the entire application and testing process. She did not offer Plaintiff employment and did not apologize for Defendant's conduct.

60. Between May and July of 2019, the Plaintiff was contacted on seven (7) separate occasions to advance his candidacy for employment with the Defendant.

61. Upon information and belief, the Defendant does not make serial contacts with applicants who it does not consider employable.

62. The Plaintiff interacted with five (5) different recruiters employed by the Defendant in 2019.

63. Based on the Plaintiff's credentials, each of these recruiters communicated to the Plaintiff that the Plaintiff would be the "right fit" for the Defendant.

64. The Defendant subjected the Plaintiff to multiple remote interviews by telephone and online exams, all of which resulted in the Plaintiff's candidacy being advanced to the more critical application, testing and selection stage.

65. Upon information and belief, the Defendant had available to it, Zoom and similar technologies available, which it did not utilize but would have facilitated viewing the Plaintiff's image.

66. Defendant's subsequent contacts with Plaintiff, following the May 29 interview, were solely intended to prevent being accused of discrimination towards a disabled person and once Plaintiff again appeared for an in-person interview on July 19, 2019, his interview was terminated again under similar circumstances which demonstrate the interviewer not wishing to hire a disabled person such as Plaintiff.

67. The Plaintiff noted that the Defendant's election of not providing architectural and operational improvements in its offices, such as: a) the doors were not retrofitted with electronic switches to permit a disabled person to open them with ease; b) the carpeting was not selected to facilitate ease of travel by a wheelchair; lighting was designed for individuals who were erect and ambulating in the workspace, not an individual who was moving in and about the area at a low level; c) signage and buttons were not retrofitted with brail; d) the presence of visual alerts for the hearing impaired

were not apparent and, mobility arrangements were not present for the evacuation of the wheel-chair bound in the event of an internal facility disruption such as violence or fire. Although Plaintiff did not require such improvements to work for Defendant, this is indicative of Defendant's lack of regard for those with a disability.

68. After the last face-to-face meeting with the Defendants Hiring Official, the Plaintiff was thereafter not selected.

## FIRST CLAIM FOR RELIEF

(Failure to Accommodate – 42 U.S.C. §§ 12112(a) and (b) (5) (A))

69. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

70. Plaintiff is a qualified individual with a disability as defined in the ADA.

71. Tim Brotzman is able, with or without reasonable accommodation, to perform the essential functions of the stocking position at SelectQuote.

72. Defendant regarded Plaintiff as so disabled as not to be hireable or an employee who could be accommodated.

73. Defendant was aware of Plaintiff's disability.

74. Defendant failed to accommodate Plaintiff by refusing to hire him and by placing obstacles to his hiring, including multiple application and testing procedures and adding travel requirements that were only added once Defendant saw his disability.

75. Defendant failed and refused to engage in good faith discussions with Plaintiff concerning his disability and ability to perform the essential functions of the job for which he had been interviewing.

9

76. Defendant denied Plaintiff's hiring and any anticipated reasonable accommodation by refusing to hire him, as required under Section 102(b) (5) (A) of the ADA.  42 U.S.C. § 12112(b) (5) (A).

77. Defendant's failure to provide Plaintiff reasonable accommodation was intentional and intended to avoid hiring a wheelchair-bound Plaintiff.

78. Defendant's failure to provide Plaintiff any reasonable accommodation was malicious and/or done with reckless indifference to Plaintiff's federally protected rights.

79. Defendant's subsequent efforts at communication with Plaintiff, following Defendant's rejection of him, were solely to create a false record or interest in hiring Plaintiff by adding repeated requests for the same information and denying Plaintiff access to local training.

80. The effect of the practices complained of in the foregoing paragraphs has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee, because of his disability.

## SECOND CLAIM FOR RELIEF
(Disparate Treatment – 42 U.S.C. §§ 12112(a) and (b) (5) (B))

81. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

82. Defendant intentionally disqualified Plaintiff because of his disability, and/or because it regarded him as disabled, and/or because of the need to provide reasonable accommodation for his disability, in violation of Sections 102(a) and 102(b) (5) (B) of the ADA.  42 U.S.C. §§ 12112(a) and (b) (5) (B).

83. Defendant's discriminatory treatment of Plaintiff, including disability harassment, was done with malice or reckless indifference to his federally protected rights.

84. The effect of the practices complained of in the foregoing paragraphs has been to deprive Plaintiff of equal employment opportunities, monetarily damage him and otherwise adversely affect his status as an applicant for employment because of his disability.

### Prayer for Relief

Wherefore, Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant SelectQuote, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against the Plaintiff because of his disability.

B. Order Defendant to hire Plaintiff

C. Order Defendant to make whole Plaintiff by providing appropriate back pay and benefits with prejudgment interest, post judgment interest and prejudgment interest on post judgment interest, compensatory damages in amounts to be proved at trial, and all other affirmative and equitable relief authorized by the ADA necessary to eradicate the effects of its unlawful employment practices, including reinstatement or front pay in lieu thereof.

D. Order Defendant to make whole Plaintiff by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in the paragraphs above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

E.    Order Defendant to pay Plaintiff punitive damages for its malicious or reckless conduct described in the paragraphs above, in amounts to be determined at trial.

F.    Order Defendant to pay Plaintiff's counsel's reasonable attorneys' fees.

G.    Order Defendant to pay all costs, including Plaintiff's costs of collection including attorneys' fees.

H.    Order Defendant to expunge any negative information contained in any file, record or information system pertaining to Plaintiff.

I.    Order Defendant SelectQuote to pay Plaintiff for the amendment of any legally required government filings upon the payment and receipt of any form of compensation.

J.    Grant such further relief as the Court deems necessary and proper.

### Jury Trial Demand

The Plaintiff, Tim Brotzman, hereby demands a trial by jury on all matters herein joined to the extent allowed by law.

Respectfully submitted this 31st day of March, 2021.

> s/ Jim Abrams
> James L. Abrams, Esq.
> James L. Abrams, LLC
> 401 Westwood Drive
> Denver, CO 80206
> 303 321 6087
> abramsjim@gmail.com
>
> Attorney for Plaintiff